UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOEMI AVILES | : |
| | : No. 5:14-cv-00533-LS |
| vs. | : |
| | : **JURY TRIAL DEMANDED** |
| DART CONTAINER CORPORATION | : |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

*JURISDICTION*

1. This Court has jurisdiction over this matter pursuant to 42 U.S.C. Section 2000(e) et seq. of the Civil Rights Act of 1964 as amended (hereinafter "Title VII"), and the Americans With Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA"). This lawsuit was filed within 90 days of plaintiff's receipt of a Right to Sue letter from the EEOC.

*PARTIES*

2. Plaintiff, Noemi Aviles, is an adult individual who resides at 602-1/2 East Chestnut Street, Apt. 3, Lancaster, PA 17602.

3. The defendant, Dart Container Corporation, is a corporation which has a principle place of business located in this Judicial District at 110 Pitney Road, Lancaster, PA 17602. Defendant employs hundreds of people.

*FACTS*

4. Plaintiff was first hired by defendant as a Packer Inspector on June 23, 2001. Over the years her duties were expanded to include the duties of First Responder, Backup Quality Control and Trainer.

5. Plaintiff was first diagnosed with chronic migraine headaches and hypertension in about 2009. She was diagnosed with chronic arthritic knees in about 2011.

6. Both of the aforementioned health conditions are disabilities under the ADA because they each substantially limit one or more major life activities.

7. In about 2010, plaintiff first filed for intermittent FMLA leave for her migraine headaches and hypertension. The terms of her intermittent leave allowed her to take leave whenever she had a flair up.

8. In 2011, plaintiff expanded her FMLA leave request to include flair ups for her arthritic knees.

9. During all times material hereto, plaintiff also sought and was granted an accommodation for her migraine headache disability wherein if she felt a migraine headache was oncoming, she would be permitted to take her migraine headache medication at the workplace and she would be given light duties for about one hour until the medication took affect.

10. Plaintiff's supervisor, Alex Carlov (First Shift Supervisor) also voluntarily took plaintiff's blood pressure whenever she had an onset of a migraine headache.

11. Plaintiff's requests for intermittent FMLA leave also constituted requests for a reasonable accommodations for her disabilities.

12. In about June 2012, plaintiff also took off about 4-5 weeks of FMLA leave for an infection in her knee.

13. When plaintiff returned from FMLA leave in July 2012, she was told by defendant's Director of Human Resources, Matt Hess that she exhausted her allotted 12 weeks and that she would not have any more FMLA days available until September 2012.

14. In late August 2012, plaintiff complained to Linda Tshudy (the QC Manager) that her supervisor, Mr. Carlov made a sexually offensive remark to her at the workplace.

15. Specifically, plaintiff told Ms. Tshudy that Mr. Carlov told her to "Not lose too much weight, because some people like more cushion for the pushin."

16. At this time, plaintiff also complained that Mr. Carlov harassed her about using up all her FMLA days.

17. Prior to September 9, 2012, plaintiff was a write-up for attendance, and plaintiff was warned that she could

not take any more days off or she would be subject to possible termination.

18. Despite this warning, plaintiff knew that valid FMLA absences would be excluded from this attendance warning.

19. On September 9, 2012, plaintiff felt the onset of migraine headache while on the job with defendant and she informed Mr. Carlov that she was going to take her migraine headache medication, and Mr. Carlov checked her blood pressure.

20. On September 9, 2012, Mr. Carlov told plaintiff that he would not allow her work the remainder of her shift because of her blood pressure reading.  Plaintiff responded that she had too many points and could not take any time off but Mr. Carlov assured her it would be "FMLA protected" and that she should not worry about it.

21. Because Mr. Hess previously told plaintiff that she would be eligible for more FMLA days in September 2012, plaintiff had no reason to disbelieve what Mr. Carlov told her about FMLA protection.

22. Plaintiff left work on September 9, 2012 at the request of Mr. Carlov and went to see her doctor.

23. On September 9, 2012, plaintiff's doctor recommended that plaintiff stay out of work until September

12, 2012. Her doctor also completed FMLA paperwork to renew her request for intermittent FMLA leave.

24. Plaintiff returned to work on September 12, 2012 and brought in the FMLA paperwork and a doctor's note and gave them to management, and plaintiff worked that day without incident.

25. On September 13, 2012, plaintiff was informed by Mr. Hess that she was being suspended because of having too many points and that she should not return to work until Monday, September 17, 2012.

26. Plaintiff informed Mr. Hess that Mr. Carlov promised that her absence was FMLA protected and that her doctor completed FMLA paperwork. Mr. Hess told plaintiff that he would investigate the matter and discuss it with corporate.

27. On September 17, 2012, plaintiff was informed by Mr. Hess that she was being terminated. He told plaintiff that "after talking to corporate, we are going to terminate you." He did not tell plaintiff that her FMLA leave request was rejected. He merely told plaintiff that she violated "Rule 38" of the company policy.

28. The defendant's proffered reason for terminating plaintiff's employment was false and was pretext to mask the true reason for her termination.

29. The true reasons why plaintiff was terminated was because: (1) she requested and took approved FMLA leave; (2) she suffered from disabilities as defined by the ADA; (3) she requested reasonable accommodations for her disabilities; (4) she was perceived as being unreliable based upon her taking of prior health-related absences; and (5) she made a good faith complaint of gender discrimination.

30. The five reasons for termination listed above were driven be discriminatory animus and each of them and all of them were unlawful motivating factors in defendant's decision to terminate plaintiff's employment.

31. Defendant wrongly perceived that based upon plaintiff's attendance and requests for accommodations and FMLA leave, she was unreliable and, therefore, unable to work a wide range of jobs.

32. Plaintiff sustained damages as a result of the unlawful conduct of defendant. Plaintiff seeks lost pay, benefits, compensatory damages for pain and suffering, punitive damages, attorneys fees and costs.

33. Plaintiff has engaged in great efforts to mitigate her damages by searching for new employment, but she has been unsuccessful in her efforts to find equivalent employment to date.

COUNT 1- VIOLATION OF THE ADA

34. Plaintiff repeats paragraphs 1-33 as if more fully set forth herein.

35. By and through its conduct, defendant violated the ADA by intentionally discriminating against plaintiff and by terminating her employment because she suffered from disabilities under the ADA, and she requested accommodations for these disabilities, and she was perceived as unreliable based upon her prior health-related absences.

COUNT 2- VIOLATION OF TITLE VII

36. Plaintiff repeats paragraphs 1-35 as if more fully set forth herein.

37. By and through its conduct, defendant violated Title VII by intentionally discriminating against plaintiff and by terminating her employment because she complained in good faith of gender discrimination.

COUNT 3- VIOLATION OF THE FMLA

38. Plaintiff repeats paragraphs 1-37 as if more fully set forth herein.

39. Plaintiff's migraine headaches and arthritic knees both qualify as serious health conditions pursuant to the FMLA.

40. The defendant was, at all times material hereto, an "employer" pursuant to the FMLA in that it was engaged in commerce and employed 50 or more employees.

41. On September 9, 2012, plaintiff was an eligible employee under the FMLA because she was employed by defendant for more than one year and she worked at least 1250 hours in 12 months prior to that date.

42. Plaintiff's treating doctors were health care providers as defined by the FMLA.

43. Plaintiff was placed on a plan of continuing treatment by his health care providers for the medical conditions hereinbefore mentioned.

44. Plaintiff provided notice to defendant of her need for FMLA protected leave as soon as was practicable as required by the FMLA.

45. As described herein above, plaintiff took approved FMLA protected leave for her migraine headache and high blood pressure between September 9, 2012 and September 12, 2012.

46. As described herein above, plaintiff was terminated because of the days she took off between September 9-12, 2012.

47. Plaintiff either had FMLA days available between September 9-12, 2012 or she detrimentally and reasonably

relied upon defendant's verbal representation that she was eligible for FMLA protected leave and that her job was not in jeopardy.

48. Said representations made by the defendant to plaintiff on September 9, 2012 that her leave would be covered by the FMLA along with prior representations that she would have FMLA days available in September 2012, caused plaintiff to believe that she was protected by the FMLA while she was out between September 9-12, 2012.

49. Assuming plaintiff was ineligible for FMLA leave for any of the days between September 9-12, 2012, if she had know that she was ineligible, she could have taken other steps to protect her job with the defendant including but not limited to avoiding taking her absences through an alternative treatment plan with her physician.

50. If defendant is allowed to assert the "exhaustion of leave time" defense after plaintiff has already taken her FMLA leave, plaintiff would suffer great harm as a result of her reliance upon defendant's representations.

51. The doctrine of equitable estoppel has been applied to FMLA cases by multiple federal circuits including the Third Circuit. In recent decisions in both the Eastern District of Pennsylvania and the Western District of Pennsylvania, District Judges have confirmed that employers

will be equitably estopped from using the defense of ineligibility when the subject employee had detrimentally relied upon representations by the employer that he/she was covered by the FMLA. See Moore v. Czarnowski, 2009 U.S. Dist. LEXIS 17273, *3-*12 (W.D.Pa. 2009); and Cathi Wilson v. Rawle & Henderson, 11-cv-4636 (E.D.Pa. 2011)(decision denying defendant's motion to dismiss in an FMLA case wherein the employer had less than 50 employees- this case is currently unpublished but accessible on PACER).

52. Defendant and its agents violated the FMLA by terminating plaintiff because she exercised her rights under the FMLA, and took and requested FMLA protected leave.

53. Defendant and its agents violated the FMLA by terminating plaintiff in retaliation for requesting and/or taking FMLA protected leave.

54. Defendant and its agents violated the FMLA by discriminating against plaintiff for taking and/or requesting FMLA protected leave.

55. As a direct result of defendant's unlawful denial of FMLA rights and its termination of plaintiff's employment as described herein above, plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost benefits and other financial losses.

56. Plaintiff is entitled to liquidated damages in an amount equal to actual damages because defendant and its agents intentionally, and/or in bad faith, violated the FMLA.

57. Plaintiff is entitled to recover reasonable attorneys fees and costs associated with the prosecution of this lawsuit.

54. Plaintiff is entitled to reinstatement of her employment.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Counts 1 and 2 against defendant for lost pay, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages, attorneys fees and costs, and demands that judgment be entered in her favor on Count 3 against defendant for lost

pay, lost benefits, other financial losses, liquidated damages, attorneys fees, costs, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion
_____
Dion & Goldberger
1845 Walnut Street, Ste. 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com


/s/ Richard B. Bateman, Jr.
_____
Richard B. Bateman, Jr., Esq.
12 Veterans Square
Media, PA 19063
(610) 566-3322
Fax: (610) 548-9986
Email: batemanlaw@aol.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOEMI AVILES | : |
| vs. | : No. 5:14-cv-00533-LS |
| | : **JURY TRIAL DEMANDED** |
| DART CONTAINER CORPORATION | : |

**CERTIFICATE OF SERVICE**

I, Samuel A. Dion, Esq., certify that I served a copy of the foregoing First Amended Complaint upon Dart Container Corporation and Dart Container Sales Company, LLC. by regular first class mail in care of Sidney R. Steinberg, Post & Schell, P.C., Four Penn Center, 1600 John F. Kennedy Blvd., Philadelphia, PA 19103 on January 28, 2014.

/s/ Samuel A. Dion

Dion & Goldberger
1845 Walnut Street, Ste. 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com